UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TAMMY ARNDTS-SETTLE,
     Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

Case No. 1:13-cv-766

Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

     Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial

review of the final decision of the Commissioner of Social Security (Commissioner) denying

plaintiff's application for supplemental security income (SSI). This matter is before the Court

on plaintiff's Statement of Errors (Doc. 13), the Commissioner's response in opposition (Doc.

18), and plaintiff's reply memorandum (Doc. 19).

**I. Procedural Background**

     Plaintiff filed an application for SSI in June 2009, alleging disability since June 1, 1999,

due to neurological damage, severe emotional problems, post-traumatic stress disorder (PTSD),

bipolar disorder, Chronic Obstructive Pulmonary Disease (COPD), hearing problems, myalgia in

both legs, and depression. (Tr. 208). The application was denied initially and upon

reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before

administrative law judge (ALJ) Mary F. Withum. Plaintiff and a vocational expert (VE)

appeared and testified at the ALJ hearing. On March 30, 2012, the ALJ issued a decision

denying plaintiff's SSI application. Plaintiff's request for review by the Appeals Council was

denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 416.920(a)(4)(i)-(v), 416.920(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir.

2

2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B.    The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] has not engaged in substantial gainful activity since June 9, 2009, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The [plaintiff] has the following severe impairments: Hearing loss (Meniere's disease), asthma, back pain, depression and bipolar disorder (20 CFR 416.920(c)).
>
> 3. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c). The [plaintiff] is able to lift up to 50 pounds occasionally or 25 pounds frequently. She is restricted from concentrated exposure to environmental irritants such as fumes, odors[,] dusts, gases and poorly ventilated areas. She is restricted from concentrated exposure to excessive noise. She is limited to occupations that do not require fine hearing capability. Work is limited to 1- or 2-step tasks in an environment free of fast-paced production requirements. She must be employed in a low stress job with only occasional decision making required and only occasional changes in the work setting. She is capable of only occasional interaction with the public and coworkers.
>
> 5. The [plaintiff] is capable of performing past relevant work as a labeler. This work does not require the performance of work related activities precluded by the [plaintiff]'s residual functional capacity (20 CFR 416.965).
>
> 6. The [plaintiff] has not been under a disability, as defined in the Social Security Act, since June 9, 2009, the date the application was filed (20 CFR 416.920(f)).

(Tr. 16-26).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*,

478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

(1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a

preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In

deciding whether the Commissioner's findings are supported by substantial evidence, the Court

considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the

disability determination. Even if substantial evidence supports the ALJ's conclusion that the

plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746.

*See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was

otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving

weight to treating physician's opinion, thereby violating the agency's own regulations).

4

### D. Specific Errors

On appeal, plaintiff argues that: (1) the ALJ erred in finding that plaintiff's mental impairments do not meet or medically equal Listing 12.04; (2) the ALJ erred in weighing the medical source opinions of plaintiff's treating psychiatrist and the state agency reviewing psychologists; and (3) the ALJ erred at Steps Four and Five of the sequential evaluation process. (Doc. 13 at 9-19). The Court will address plaintiff's second assignment of error first, as its resolution may impact the remaining issues.

1. <u>Whether the ALJ erred in weighing the mental health medical opinions of record</u>.

The following is a brief summary of the pertinent medical evidence of record. Plaintiff was hospitalized at Good Samaritan Hospital in October 2002 for suicidal ideation after demonstrating increased symptoms of depression. (Tr. 288-305). She reported experiencing a nervous breakdown in 1999 and being recently hospitalized at Miami Valley Hospital from December 2001 through January 18, 2002, for psychiatric treatment. (Tr. 289). Plaintiff's behavior was described as "bizarre, as one minute she is sedated and sleeping and the next minute she becomes alert and is pacing around the room." (Tr. 292). Plaintiff was diagnosed with bipolar mood disorder and depression with suicidal ideation and she was assigned a Global Assessment of Functioning (GAF) score of 25.[1] (*Id*.).

In February 2009, plaintiff began receiving mental health treatment at South Community Inc. (South Community). (Tr. 448-49). The record includes treatment and progress notes from

---

[1]A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id*. The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id*. at 34. Individuals with scores of 21-30 are classified as having "behavior considerably influenced by delusions or hallucinations or serious impairment in communication or judgment or

5

plaintiff's counselors and treating psychiatrist, Susan Songer, M.D., at South Community through January 2012. (Tr. 444-528, 681-754, 763-779, 986-1030, 1209-1225, 1265-1278). Plaintiff was initially diagnosed with major depressive disorder, recurrent, moderate; PTSD; and rule out generalized anxiety and bipolar disorder. (Tr. 487). Plaintiff's mental health providers at South Community drafted an Individualized Service Plan with the primary goal being to improve her ability to cope with anxiety. (Tr. 472-73).

Plaintiff saw Dr. Songer on March 25, 2009 for an initial psychiatric evaluation. (Tr. 515-18). Plaintiff described manic episodes followed by depression and that she had been off her medication for three years. (Tr. 515). On mental status examination, plaintiff was found to be well-groomed with average demeanor and she had average eye contact and clear speech. (Tr. 516). She reported no delusions, self-abuse, aggression or hallucinations and her thought processes were found to be logical and mildly circumstantial and tangential. (*Id.*). Dr. Songer found plaintiff's mood was moderately depressed and mildly anxious; she had a full affect and was cooperative; and her insight and judgment were fair. (Tr. 516-17). Dr. Songer diagnosed plaintiff with bipolar disorder with moderate depression and chronic PTSD and assigned her a GAF score of 50.[2] (Tr. 474).

Progress notes from February to May 2009 include plaintiff's reports that she wants to work on her relationships with her family and "to be happy again" as well as statements that plaintiff does not "really like people right now" because "they're stupid, ignorant." (Tr. 507-08). Plaintiff's psychologist, Mary Jane Ferguson, Psy.D., noted on March 19, 2009, that

---

inability to function in almost all areas." *Id.* at 32.

[2]Individuals with GAF scores of 41-50 are classified as having serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job, cannot work). Diagnostic and Statistical Manual of Mental

plaintiff presented as hopeless, sad, and easily frustrated (Tr. 507); she was calmer on April 9, 2009 (Tr. 505); and on April 16, 2009, plaintiff reported feeling very irritable, having memory problems, and sleeping less but having increased energy. (Tr. 503).

A May 5, 2009 progress note from Dr. Songer includes plaintiff's ongoing reports of irritability, edginess, and being easily angered. Dr. Songer noted that plaintiff's thought processes were logical but she needed direction at times as she was a bit circumstantial and tangential. Plaintiff's mood was described as "good" but edgy at times and she was observed as having a full affect. (Tr. 514).

That same day, Dr. Songer completed a functional capacity form wherein she reiterated plaintiff's diagnoses of bipolar disorder and chronic PTSD and identified that plaintiff has problems with irritability, anxiety, anger, depression, decreased patience, concentration, motivation, energy, and self-esteem. Dr. Songer further reported that plaintiff feels worthless, hopeless, and helpless at times; experiences intrusive memories, flashbacks, and nightmares of past abuse; and displays avoidance behavior and hyper arousal symptoms. (Tr. 445-46). Dr. Songer opined that plaintiff's suffered from limitations that rendered her unemployable for a period of nine to 11 months. (Tr. 446).

On June 16, 2009, plaintiff treated with Dr. Songer and reported feeling "lethargic" on Klonopin and tired all the time. Plaintiff also reported not having problems with anxiety and experiencing "quiet" and "introverted" moods, though she continued to be easily irritated with herself. Dr. Songer observed that plaintiff had logical and linear thought processes; no psychosis; a "quiet" and "tired" mood; and full range of affect. (Tr. 512).

_____

Disorders 34.

Non-examining state agency psychologist, Marianne Collins, Ph.D., reviewed the file in August 2009 and opined that plaintiff was mildly restricted in her activities of daily living; moderately limited in maintaining social functioning and in maintaining concentration, persistence or pace; and had experienced no episodes of decompensation. (Tr. 592.) Dr. Collins further opined that plaintiff was moderately limited in her abilities to carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the public; accept instructions and respond appropriately to supervisor criticism; get along with coworkers or peers without distracting them or being distracting; and respond appropriately to changes in the work setting. (Tr. 596-97). Dr. Collins concluded that plaintiff maintains the ability to complete work-related tasks that do not involve more than daily planning or extended periods of attention and concentration. She also opined that plaintiff should not be required to influence others to follow instructions, demands, or handle criticism. Dr. Collins found that plaintiff is credible. (Tr. 598.)

November 2009 progress notes from Dr. Songer show that plaintiff reported having a lot of stressors, being depressed, and pacing and crying a lot. (Tr. 745). Dr. Songer observed plaintiff was shaking her leg during their session and was depressed and tearful, but she had logical and linear thought processes with no signs of psychosis although plaintiff reported having some auditory hallucinations. (*Id*.). In January 2010, Dr. Songer observed plaintiff still had a depressed mood and was tearful, but she was able to laugh and smile at times. (Tr. 743).

8

January 2010 progress notes from plaintiff's counseling sessions at South Community reflect that plaintiff's mood was euthymic and that she had a full affect. (Tr. 763). In February 2010, plaintiff's Individualized Service Plan was updated to reflect her goal of improve her coping skills. (Tr. 687-88). She was noted to be non-compliant with treatment. (*Id*.). On March 19, 2010, plaintiff's counselor reported she was tearful and struggling with her PTSD. (Tr. 770). However, the next week plaintiff told her counselor that she had experienced a "breakthrough" and plaintiff was observed as being cheerful. (Tr. 768). April 2010 counseling progress notes show that plaintiff's father was in the hospital and she was tearful and afraid of having a "nervous breakdown." (Tr. 766).

On April 10, 2010, non-examining state agency psychologist Cynthia Waggoner, Psy.D., reviewed the record and affirmed Dr. Collins' prior opinion. (Tr. 762).

Plaintiff treated with Dr. Songer on April 12, 2010, and reported experiencing a lot of stress related to her father's illness, but said she was feeling better. Dr. Songer reported that plaintiff had logical though often circumstantial thought processes, a "great" mood, and a full range of affect. (Tr. 774).

In June 2010, plaintiff presented to the emergency room for evaluation of a possible anxiety episode. (Tr. 792). It was reported that she was involved in a stressful situation during which time she developed an episode of chest pain and then fell to the grass. (*Id*.). Plaintiff was treated and released with diagnoses of near-syncopal episode, generalized anxiety disorder, and a probable anxiety attack. (Tr. 795).

Dr. Waggoner reviewed the record again on June 29, 2010, and reaffirmed Dr. Collins' opinion. (Tr. 822)

On August 21, 2010, plaintiff was "pink slipped" to Grandview Hospital via Crisis Care. She was overtly psychotic and very delusional with extreme religiosity. Upon arrival, it was noted that she had not taken her psychiatric medication for the past two months. Plaintiff was treated with counseling on an individual basis and through group therapy and was prescribed medication. Luis Justiniano-Toro, M.D., the psychiatrist who treated plaintiff during her hospitalization, noted she was fairly co-operative with these modalities of treatment, but her insight continued to be impaired. Plaintiff was diagnosed with bipolar I disorder with religiosity and grandiose ideas. She was discharged three days later. (Tr. 952-65).

On October 6, 2010, Dr. Songer completed a Medical Functional Capacity Assessment. Dr. Songer found plaintiff was moderately limited in her abilities to: remember locations and work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; accept instructions and respond appropriately to criticism from supervisors; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. Dr. Songer also found that plaintiff was moderately to markedly impaired in her abilities to: understand and remember detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable

10

number and length of rest periods; interact with the general public; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting. Plaintiff was found to be markedly impaired in her ability to carry out detailed instructions. Dr. Songer concluded that plaintiff is unemployable and not suitable for either full-time employment or even part-time employment for a period between nine months and 11 months. Plaintiff's mental status examination revealed that plaintiff had mild psychomotor agitation; was "moody" with a full range of affect; had thought processes that were illogical, tangential, and circumstantial at times; exhibited some hyper religiosity and paranoia; and had a history of visual and auditory hallucinations prior to being hospitalized in August 2010. Dr. Songer further reported that plaintiff had fair-to-poor judgment and insight and some problems with concentration and memory. (Tr. 1024-27).

On December 1, 2010, plaintiff's counselor at South Community observed that plaintiff appeared depressed. (Tr. 1021). That same day, plaintiff told Dr. Songer "I'm not good" and reported that it had been 16 weeks since she spoke with a therapist and that not having anyone to talk to was making her more depressed. (Tr. 1018). Dr. Songer reported that plaintiff was depressed and briefly tearful, and that she had experienced some suicidal ideation since her last appointment. (Tr. 1018).

January 2011 treatment notes from Dr. Songer include her findings that plaintiff's mood was better, she had a full affect and linear thought processes, and that plaintiff reported less depression on Lexapro. (Tr. 1013-14). However, on January 20, 2011, plaintiff presented at therapy with a flat to constricted affect and circumstantial thought process which required the counselor to redirect her during the session. (Tr. 1011). Plaintiff again needed redirection

11

during counseling on January 31, 2011, but her thought processes were reported as logical; her mood was eager; and her affect was constricted. (Tr. 1009-10). February 2011 counseling notes include observations that plaintiff was logical but tense with a composed mood and "blunted intensity, restricted range affect." (Tr. 1003). March and May 2011 counseling progress notes include findings of irritable, incongruent, sad, and calm mood; flat intensity and blunted restricted range affect; and circumstantial thought processes. (Tr. 990, 993, 1000).

Dr. Songer's June and August 2011 treatment notes include findings that plaintiff presented as stable with a full range affect; logical and linear thought processes; and fair insight and judgment. (Tr. 988-90, 1220-22). On October 1, 2011, plaintiff was treated at the emergency room for a "behavioral episode" and was diagnosed with depression. (Tr. 1226-31). In October and November 2011, Dr. Songer observed plaintiff as tearful at times and having a moody, irritable, and depressed mood; logical but linear to circumstantial at times thought processes; and grossly intact cognition though plaintiff reported memory problems. (Tr. 1211-13, 1217-19).

November 2011 counseling notes reflect that plaintiff was highly engaged in therapy with organized and linear thoughts and a full range affect. (Tr. 1214). December 2011 and January 2012 counseling notes include plaintiff's reports of feeling stress and physical pain but these records contain few observations as to her mental status. *See* Tr. 1273, 1277.

The ALJ gave Dr. Collins and Dr. Waggoner's opinions "great weight," finding that although they were not able to review the complete record, including plaintiff's August 2010 hospitalization and South Community records through early 2012, they are consistent with the record as a whole. (Tr. 24). The ALJ did not address Dr. Songer's October 2010 opinion in her

12

decision and erroneously stated that there was "no functional statement provided by either an examining or treating source" in the record regarding plaintiff's mental impairments. (*Id*.).

"The Commissioner has elected to impose certain standards on the treatment of medical source evidence." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). "These standards, set forth in administrative regulations, describe (1) the various types of evidence that the Commissioner will consider, 20 C.F.R. § 404.1512; (2) who can provide evidence to establish an impairment, 20 C.F.R. § 404.1513; and (3) how that evidence will be evaluated, 20 C.F.R. § 404.1520b. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). This evidence may include "medical opinions, which 'are statements from physicians and psychologists . . . that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [ ] symptoms, diagnosis and prognosis,' physical and mental restrictions, and what the claimant can still do despite his or her impairments." *Id*., (citing 20 C.F.R. 404.1527(a)(2)).

The applicable regulations lay out the three types of acceptable medical sources upon which an ALJ may rely on: treating source, nontreating source, and nonexamining source. 20 CFR § 416.902. When treating sources offer opinions, the Social Security Administration is to give such opinions the most weight and is procedurally required to "give good reason in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d at 875. This requirement only applies to treating sources. *Id*. at 876. "With regard to nontreating, but examining, sources, the agency will simply generally give more weight to the opinion of a source who has examined the claimant than to the opinion of a source who has not examined him." *Ealy v. Comm'r of Soc. Sec.*, 594

13

F.3d 504, 514 (6th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(1)) (internal citations omitted). With this framework in mind, the Court turns to plaintiff's arguments.

Plaintiff asserts the ALJ's failure to discuss Dr. Songer's October 2010 opinion is reversible error. Plaintiff further asserts Dr. Songer's opinion should be given controlling weight because it is well-supported by and consistent with other evidence of record. Plaintiff also claims the ALJ erred by giving "great weight" to the opinions of the state agency reviewing psychologists because their opinions were based on incomplete reviews of the record. (Doc. 13 at 15-17).

The Commissioner responds that any error committed by the ALJ's failure to address Dr. Songer's opinion is harmless under *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)[3] because: (1) the "one page opinion consists merely of a series of checkboxes with no explanation or citation to objective observation or medication evidence whatsoever" and is so patently deficient that it could not possibly be credited; and (2) the ALJ made findings consistent with Dr. Songer's findings. (Doc. 18 at 7-8). For the following reasons, the undersigned finds that the ALJ committed reversible error by ignoring substantial evidence of record in her review of plaintiff's claim.

First, contrary to the Commissioner's contention, Dr. Songer's opinion was not merely a one page opinion consisting of only a series of checked boxes. In making this argument, the Commissioner cites to only the first page of Dr. Songer's opinion. *See* Doc. 18 at 8, citing Tr. 1024. Review of the record clearly establishes, however, that Dr. Songer's opinion consists of

---

[3]In *Wilson*, the Sixth Circuit Court of Appeals laid out instances where an ALJ's failure to consider opinion evidence as required by Social Security regulations would constitute a harmless procedural error, including: (1) when a "treating sources opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) when "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; and (3)

four separate pages, the second of which contains the doctor's narrative explanation in support of her conclusions.  *See* Tr. 1025.  Because Dr. Songer's check-boxed findings are accompanied by this explanatory paragraph, her opinion is not patently deficient under *Wilson* and the ALJ's error in ignoring the treating psychiatrist's opinion was not harmless.  *Cf. May v. Astrue*, No. 3:09-cv-90, 2009 WL 4716033, at *8 (S.D. Ohio Dec. 9, 2009) (ALJ's failure to address treating source's opinion was harmless error where it was merely checked boxes unaccompanied by any supporting explanation).

Moreover, the record includes nearly three years of progress notes from Dr. Songer and plaintiff's counselors at South Community which are, at the very least, not inconsistent with Dr. Songer's opinion.  *See Blakely*, 581 F.3d at 409-10 (holding that the ALJ's failure to weigh all of the opinion evidence from the plaintiff's treating sources was not harmless error where it was not inconsistent with objective evidence in the record).  *See also Davis v. Astrue*, No. 3:08-cv-434, 2010 WL 546444, at *7 (E.D. Tenn. Feb. 10, 2010) (holding that treating source's opinion was not patently deficient under *Wilson* where it was not inconsistent with the source's treatment notes).  In consideration of Dr. Songer's supporting narrative explanation and the accompanying treatment notes, the ALJ's failure to address this evidence was not harmless error.

Second, in view of the record as a whole, it was incumbent upon the ALJ to address Dr. Songer's opinion despite the doctor's notation that plaintiff's limitations were expected to last for less than one year.  *See* Tr. 1024.  In October 2010, Dr. Songer opined that plaintiff had myriad functional limitations that fell within a moderate to marked range of severity due to her mental health impairments.  At that time, Dr. Songer reported that plaintiff's functional limitations were

---

where the Commissioner has met the goals of the regulations despite not complying with their terms.  *See Wilson*, 378 F.3d at 571 (citations omitted).

expected to last for nine to 11 months. The Commissioner maintains that the ALJ's decision –

that plaintiff did not qualify for disability benefits – is consistent with Dr. Songer's opinion

because the doctor did not find that plaintiff's limitations would last for a period of 12 months or

more. (Doc. 18 at 12) (citing Tr. 19, 1024). *See also* 42 U.S.C. § 1382c(a)(3)(A) (to qualify for

disability benefits, plaintiff's disabling impairments must be expected to last for a period of not

less than 12 months). The Commissioner therefore contends that the ALJ's failure to address

the opinion was harmless error under *Wilson*. (*Id.*).

Upon review of the treatment notes from South Community generated before and after

Dr. Songer's October 2010 opinion, the undersigned finds that the ALJ erred by not addressing

this evidence. As detailed *supra*, Dr. Songer regularly treated plaintiff from February 2009 to at

least January 2012. The observations and progress notes of Dr. Songer and plaintiff's other

mental health providers prior to October 2010 are substantially similar to the later generated

evidence, up to and including progress notes from January 2012. *Compare* Tr. 515-18 (Dr.

Songer's March 2009 initial evaluation includes findings that plaintiff was moderately depressed

and mildly anxious, with full affect, and fair insight and judgment) *and* Tr. 774 (in April 2010,

Dr. Songer observed plaintiff had logical but circumstantial thought processes, a "great" mood,

and full range of affect) *with* Tr. 1217-19 (in November 2011, Dr. Songer observed plaintiff was

moody and depressed with logical but occasionally circumstantial thought processes) *and* Tr.

1214 (November 2011 counseling notes show that plaintiff had organized and linear thoughts

with a full range of affect). Because the evidence reflects no discernible difference in plaintiff's

condition in November 2011 compared to October 2010, the Court cannot conclude that the

ALJ's failure to address Dr. Songer's opinion was harmless error. Without *some* discussion

16

from the ALJ, the Court is simply unable to meaningfully review the ALJ's decision.  *Hurst v. Sec'y of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (quoting *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)) ("It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence.   It is absolutely essential for meaningful appellate review.").   The Court further notes that the ALJ also ignored the functional capacity form completed by Dr. Songer in May 2009 in which she opined that plaintiff had functional limitations that were expected to last for a period of nine to 11 months.  *See* Tr. 446.   As evidenced by her October 2010 opinion (generated over 17 months later), Dr. Songer implicitly acknowledged that plaintiff's functional limitations lasted longer than she previously assessed.

Third, contrary to the Commissioner's contention, the ALJ did not adopt Dr. Songer's findings or make determinations consistent with the doctor's opinion.   The Commissioner argues that the ALJ's findings that plaintiff had no more than moderate limitations in social interaction and in concentration, persistence or pace are consistent with Dr. Songer's opinion because the doctor opined that "plaintiff is mostly moderately limited" in these areas.   (Doc. 18 at 12) (citing Tr. 19, 1024).   Contrary to the Commissioner's argument, Dr. Songer opined that plaintiff had moderate *to marked* limitations these abilities (Tr. 1024) and the ALJ's finding that plaintiff suffers from only moderate functional limitations is inconsistent with Dr. Songer's finding of limitations that reach the marked level of severity.   Accordingly, the ALJ's failure to address this opinion evidence is not excused as harmless error under *Wilson*.

As a final matter, the undersigned finds that the ALJ erred by giving "great weight" to the conclusions of the non-examining state agency psychologists as their opinions were based on incomplete reviews of the record.   The ALJ acknowledged that the opinions of the state agency

psychologists were not based on the entire record, but she nevertheless concluded that they were "consistent with the record as a whole." (Tr. 24). However, there was substantial evidence entered into the record after the state agency psychologists performed their review that is plainly inconsistent with their opinions, namely Dr. Songer's October 2010 medical assessment which the ALJ ignored. In addition to Dr. Songer's assessment, the state agency psychologists did not review plaintiff's August 2010 hospital admission for psychosis (Tr. 952-65) or the 18 months' worth of treatment notes from South Community (Tr. 986-1030, 1209-26, 1265-78) that were generated after their review. There was significant evidence related to plaintiff's mental health impairments generated after these doctors' review of the record such that the ALJ decision to give "great weight" to their opinions is not substantially supported.

Additionally, it appears the ALJ gave these opinions "great weight" despite their incompleteness because the ALJ believed the treatment records showed that plaintiff's "symptoms are controllable with compliance to treatment, including medication and therapy." (Tr. 24). The ALJ stated: "Indeed, [plaintiff's] alleged breakdowns in August 2010 and October 2011 dovetailed with periods of noncompliance. During those times that she was compliant, on the other hand, her psychiatric treatment was routine and conservative." (Tr. 24-25). There is no medical opinion relied upon by the ALJ that draws a correlation between plaintiff's compliance with medication and her level of functionality.

Yet, even if the ALJ's conclusion in this regard is substantially supported, the question not answered by the ALJ is whether plaintiff had "good reasons" for allegedly not following prescribed treatment. It is generally proper to base a finding of no disability on a claimant's lack of compliance with treatment. In fact, in order to receive disability benefits, claimants "must

18

follow treatment prescribed by physician[s] if this treatment can restore [their] ability to work."

20 C.F.R. § 416.930(a). If a claimant does "not follow the prescribed treatment *without a good*

*reason*, [the ALJ] will not find [her] disabled[.]" 20 C.F.R. § 416.930(b) (emphasis added).

Social Security Ruling 82-59 instructs that when a claimant is not complying with prescribed

treatment, the claimant "should be given an opportunity to fully express the specific reason(s) for

not following the prescribed treatment. Detailed questioning may be needed to identify and

clarify the essential factors of refusal. The record must reflect as clearly and accurately as

possible the [claimant's] reason(s) for failing to follow the prescribed treatment. Individuals

should be asked to describe whether they understand the nature of the treatment. . . [and] should

be encouraged to express in their own words why the recommended treatment has not been

followed." SSR 82-59, 1982 WL 31384, *2 (1982).[4]

The ALJ did not elicit this information from plaintiff at the hearing despite her duty to

fully and fairly develop the record. Plaintiff testified she was without health insurance and that

she was compliant with her medications. (Tr. 43, 49). The ALJ did not question plaintiff

further regarding her compliance with her mental health treatment or identify what evidence in

the record established that she was noncompliant with treatment. "[T]he ALJ should have

questioned [p]laintiff in more detail with the goal of identifying and clarifying 'the essential

factors of refusal.' Without such questioning, the record – and in turn, the ALJ's Decision - fails

to 'reflect as clearly and accurately as possible the [plaintiff]'s . . . reason(s) for failing to follow

_____

[4]"Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner. 20 C.F.R. § 402.35(b)(1). In *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004) the court refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same was as Social Security Regulations, but *assumed* that they are. [The Court] makes the same assumption in this case." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (emphasis in original).

19

the prescribed treatment' as required by Ruling 82-59." *Franklin v. Astrue*, No. 3:09-cv-242, 2010 WL 2667388, at *9 (S.D. Ohio June 10, 2010) (quoting SSR 82-59, 1982 WL 31384, at *2) (Report and Recommendation), *aff'd*, 2010 WL 2653332 (S.D. Ohio June 30, 2010).

Accordingly, the Court finds plaintiff's assignment of error well-taken and recommends that the matter be remanded to the ALJ for further consideration consistent with this Report.

2. Whether the ALJ erred in finding plaintiff's mental impairments did not meet or
   medically equal Listing 12.04.

Plaintiff argues the ALJ erred at Step Three of the sequential evaluation process by failing to address Dr. Songer's opinion which establishes that plaintiff has marked limitations in mental functioning sufficient to meet or medically equal the criteria of Listing 12.04B. Plaintiff maintains the ALJ also failed to adequately address other substantial evidence of record, including treatment and counseling progress notes, her history of hospitalizations for mental health treatment, and her testimony in finding that she did not meet or medically equal this listing. (Doc. 13 at 9-13).

The Court need not address whether the ALJ erred by failing to find that plaintiff meets Listings 12.04B for affective disorders. In support of her allegations that the ALJ erred at Step Three of the sequential evaluation process, plaintiff's primarily relies on Dr. Songer's October 2010 opinion. The Court has determined that the ALJ erred by failing to address or engage in a proper weighing analysis of this opinion evidence. Accordingly, because plaintiff's Listings argument depends on Dr. Songer's October 2010 opinion, the ALJ should determine on remand after re-weighing the opinion evidence whether plaintiff's mental impairments meet Listing 12.04B.

3. <u>Whether the ALJ erred at Steps Four and Five of the sequential evaluation process</u>.

For her final assignment of error, plaintiff asserts the ALJ erred in formulating her RFC and in relying on the VE's testimony as substantial support at Steps Four and Five of the sequential evaluation process. (Doc. 13 at 17-19). Plaintiff's argument is essentially a reformulation of her first assignment of error, which alleges that the ALJ erred in failing to consider Dr. Songer's October 2010 opinion and in giving "great weigh" to the opinions of the state agency psychologists. Because the Court has determined that the ALJ erred by ignoring Dr. Songer's opinion and that her decision to give "great weight" to the reviewing psychologists is not supported by substantial evidence, plaintiff's third assignment of error should be sustained.

**III. Conclusion**

This matter should be reversed and remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). On remand, the ALJ should, consistent with this opinion, address the opinion evidence from Dr. Songer as required by the Social Security regulations, reconsider the weight afforded to the non-examining state agency psychologists, and obtain additional medical opinion evidence as necessary. Further, after re-weighing the opinion evidence of record, the ALJ should reassess whether plaintiff meets Listing 12.04B and reformulate plaintiff's RFC.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **REVERSED** and **REMANDED** for further

proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).


Date: _1/30/2015_

Karen L. Litkovitz
United States Magistrate Judge

22

## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TAMMY ARNDTS-SETTLE,
    Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:13-cv-766
Dlott, J.
Litkovitz, M.J.

### NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).